OHIO SAVINGS ASSOCIATION, APPELLEE, *v.* CORTELL, APPELLANT.

(No. 49029 — Decided May 13, 1985.)

*Kalk & Valore* and *Joseph Kalk,* for appellee.

*Calfee, Halter & Griswold* and *William Tousley Smith,* for appellant.

NAHRA, J. On November 7, 1978, Karl O. Koch and Sandra L. Koch executed an Open-End Mortgage Note ("Note") in which they promised to pay $75,000 plus interest to the order of the Ohio Savings Association ("Ohio Savings"), appellee. On November 29, 1978, Ralph Cortell, appellant, signed a contract[1] guaranteeing payment of the Note. This guarantee was a condition precedent to the loan funds being made available to the Kochs.

By letter dated September 13, 1983, Ohio Savings notified Cortell that the Kochs had defaulted in the payment of their loan and that it was looking to him as guarantor for payment in full. Through his attorney, by letter dated October 19, 1983, Cortell responded that he was exercising his right to require Ohio Savings to commence an action and recover a judgment against the Kochs prior to attempting collection from him pursuant to R.C. 1341.04.[2]

On October 31, 1983, Ohio Savings filed a "Complaint on Cognovit Guarantee" against Cortell demanding

---

[1] A copy of the guarantee is reproduced in full at the conclusion of our opinion in the Appendix. See *infra* at 237.

[2] R.C. 1341.04 provides:

"A person bound as surety in a written instrument for the payment of money or other valuable thing, if a right of action accrued thereon, may require his creditor, by notice in writing, to commence an action on such instrument forthwith against the principal debtor. Unless the creditor commences such action within a reasonable time thereafter, and proceeds with due diligence, in the ordinary course of law, to recover judgment against the principal debtor for the money or other. valuable thing due thereby, and to make by execution the amount thereof, the creditor, or the assignee of such instrument, so failing to comply with the requisition of such surety, thereby shall forfeit the right which he otherwise would have to demand and receive of him the amount due thereon."

judgment in the amount of $78,438.97, with interest at the rate of 12.25 percent per annum on $73,703.75 from October 31, 1983, which was confessed by answer filed on November 4, 1983. That same date the trial court entered judgment for Ohio Savings in the amount of $73,703.75 with interest at 12.25 percent.

On November 15, 1983, Cortell filed a "Motion for a New Trial, Relief From Judgment, and Leave to File an Amended Answer With a Request for an Evidentiary Hearing." Ohio Savings opposed Cortell's motions, and on July 10, 1984, the trial court overruled Cortell's motions. Appellant timely appealed raising the following assignments of error:

"1. The court below abused its discretion in overruling defendant's motions for new trial, for relief from judgment, and for leave to file an amended answer.

"2. The court below abused its discretion in denying defendant's request for an evidentiary hearing, and in overruling his motions for a new trial, for relief from judgment and for leave to file an amended answer without a hearing.

"3. The court below deprived defendant of 14th Amendment due process of law in overruling his motions for new trial and for relief from judgment without a hearing."

We will address these assigned errors together.

We note at the outset that Civ. R. 59, which governs new trial motions, applies only to proceedings in which there has been a trial. *Shearson, Hayden & Stone* v. *Steiner* (1979), 66 Ohio App. 2d 10 [20 O.O.3d 34]. No trial occurred below since judgment was confessed. Therefore, Cortell's motion for a new trial was a nullity. Appellant's challenge to the Civ. R. 60(B) denial remains viable, however.

Appellant first contends that the court erred in rendering a cognovit judgment against him when the note he guaranteed was for a loan of money for the cost of purchasing a family residence, *i.e.,* a consumer loan, in violation of R.C. 2323.13(E). This court has previously held, however, that R.C. 2323.13(E)(1), which defines consumer loan, does not apply to real estate transactions. *Vroman* v. *Halishak* (1984), 22 Ohio App. 3d 14. Accordingly, the court did not err on this ground.

Appellant next argues that the court erred in denying his Civ. R. 60(B) motion because he had a meritorious defense, *i.e.,* he required Ohio Savings to sue and recover judgment against the Kochs, the principal debtors, before pursuing him, the surety, as provided in R.C. 1341.04. Ohio Savings contends that Cortell is a guarantor and not a surety, but also asserts in the alternative that Ohio Savings is not precluded by R.C. 1341.04 from suing Cortell after it commenced suit against the Kochs.

Prior to the enactment of the Ohio Uniform Commercial Code ("Commercial Code") on July 1, 1962, a surety was distinguished from a guarantor in that a surety was primarily liable by joining in the same promise as the principal while a guarantor was only secondarily liable by making a separate and individual promise. *Galloway* v. *Barnesville Loan, Inc.* (1943), 74 Ohio App. 23 [29 O.O. 214]; see, generally, Simpson, Handbook on the Law of Suretyship (1950), at pages 16-23. While both a surety and a guarantor were obliged to pay the obligation of another, the guarantor's liability was contingent upon the default of his principal. *Galloway, supra,* at 27-28. At default, the guarantor became absolutely liable when notified, *id.,* and had no right to require the creditor to commence an action against the principal prior to proceeding against him, *Galloway, supra.*

Under the common law, Cortell is a guarantor and not a surety since, ac-

cording to the terms of the contract of guarantee, Cortell became liable on the Note only upon the nonperformance of the Kochs, "upon the[ir] mere failure to pay, in season, any sum required to be paid * * *." Consequently, the rights afforded sureties by virtue of the statutes contained in R.C. Chapter 1341 are not available to Cortell.

Our position is the same when we apply the Commercial Code. In situations involving commercial paper, such as this one, the distinction between a surety and a guarantor has been virtually abolished by the provisions of the Commercial Code. R.C. 1301.01(NN), which applies to R.C. Chapters 1301 to 1309 and not to R.C. Chapter 1341, provides that the term "surety" includes the term "guarantor." Pursuant to R.C. 1303.51 (UCC 3-415), a party who signs an instrument in any capacity for the purpose of lending his name to another party to it is an accommodation party and will be liable in the capacity in which he has signed. The Official Comment to this section provides, in part, that:

"1. Division (A) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. * * *"

R.C. 1303.52 (UCC 3-416) provides two capacities in which a Commercial Code surety may sign:

"(A) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

"(B) 'Collection guaranteed' or equivalent words added to a signature means that the signer engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him.

"(C) Words of guaranty which do not otherwise specify guarantee payment." See, generally, White & Summers, Handbook of the Law under the Uniform Commercial Code (2d Ed. 1980), at pages 516-535.

These provisions have been applied whether the Commercial Code surety signs the instrument itself or a separate contract of guaranty. See, e.g., Commerce Union Bank v. Burger-In-A-Pouch, Inc. (Tenn. 1983), 657 S.W.2d 88; Hopkins v. First Natl. Bank at Brownsville (Tex. 1977), 551 S.W.2d 343; see, generally, Annotation (1981), 10 A.L.R.4th 897.

In this case, Cortell is a "payment guaranteed" surety on the Note and therefore comes under R.C. 1303.52(A). According to the provisions of his contract, he absolutely and unconditionally guaranteed payment of the Note if the Note was not paid by the Kochs when due, without Ohio Savings being required to pursue any other party for payment. Accordingly, the provisions of R.C. 1341.04 enacted prior to the Commercial Code, wherein sureties may require creditors to sue the principal debtor, are not applicable to commercial paper "payment guaranteed" sureties under R.C. 1303.52 of the Commercial Code. Therefore, R.C. 1341.04 was not available to Cortell as a defense, and the trial court was correct in overruling his Civ. R. 60(B) motion. Appellant's assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JACKSON, P.J., and ANN McMANAMON, J., concur.

APPENDIX

G U A R A N T E E

FOR AND IN CONSIDERATION of THE OHIO SAVINGS ASSOCIATION (the "Association") granting a loan evidenced by the Open-End Mortgage Note ("the Note") dated _____, in which note KARL O. KOCH AND SANDRA L. KOCH, is/are the borrower(s) in the principal amount of SEVENTY FIVE THOUSAND----------------------- ($75,000.00) (the "Note") and for good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned, RALPH CORTELL and referred to as ("the Guarantor") whether there be one or more Guarantors and hereby absolutely and unconditionally, guarantees (i) the payment of the aforesaid Note and (ii) the performance of all of the terms, conditions, convenants and agreements contained in the Open-End Mortgage given to secure the Note.

The obligation created in this Guarantee is independent of the obligations of the borrower(s) under the Note. A separate action may be brought and maintained against the Guarantor upon the mere failure to pay, in season, any sum required to be paid pursuant to the terms of the Note or the Mortgage, whether or not any action is brought against the borrower(s).

The Guarantor authorizes the Association, without notice or demand, and without affecting the Guarantor's liability hereon, from time to time: (i) to extend, accelerate or otherwise change the time for payment and (ii) to take any action authorized to be taken by the Association provided in the Note and Mortgage.

The Guarantor hereby waives any right to require the Association to proceed against the borrowers, to proceed against or exhaust any security or to pursue any remedy whatsoever.

Guarantor waives all notices of presentment, default, protest or dishonor and all demands for performance and notice of acceptance of this Guarantee.

The undersigned hereby authorizes any attorney-at-law to appear in any Court of Record in the State of Ohio, or in the United States, at any time after the above obligation becomes due, either at its stated maturity or by declaration, and waives the issuing and service or process and confess a judgment against the undersigned in favor of the holder hereof for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal and stay of execution.

Dated this ___29___ day of ___Nov___, 1978

WARNING--BY SIGNING THIS PAPER, YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU OR YOUR EMPLOYER REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.

RALPH CORTELL