**D.L. BAKER & CO., INC. d/b/a Baker & Co., Inc., Plaintiff**

v.

**Frank ACOSTA, Defendant.**

No. C88–0071.

United States District Court,
N.D. Ohio, E.D.

July 21, 1989.

R. Jeffrey Pollack, Burke Haber & Berick, Cleveland, Ohio, for plaintiff.

John Sammon, Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

## BACKGROUND

Presently pending before this Court is Plaintiff D.L. Baker's ("Baker") Motion for Partial Summary Judgment in an action to recover a deficiency balance allegedly owing on Defendant's securities account with Plaintiff. Baker is a securities broker-dealer in Cleveland, Ohio and is registered with the New York Stock Exchange and the National Association of Securities Dealers. On or about March 25, 1985, Defendant Frank Acosta ("Acosta") opened a margin account with Cowen and Co. ("Cowen"),

maintained through an arrangement with Baker, in which transactions in securities and securities options were to be effected. Simultaneously, Acosta and Cowen executed a "Customer Agreement," the terms of which govern transactions in the margin account. Baker has initiated this action as a third party beneficiary to the Customer Agreement, as conceded by Acosta (Answer and Counterclaim Paragraph 8).

Cowen maintains an in-house margin rule that stock which falls below the price of $4.00 per share is unmarginable, that is, such stock may not be used as collateral to secure a debit cash balance in a margin account. Cowen's rule further provides that the customer must maintain equitable ownership in the account of at least thirty-five percent (35%) of the market value of the margin account. In the event that margined stock declines below $4.00 per share or the customer's equity in the account declines to less than 35%, Cowen would make a margin call by requiring the customer to provide additional collateral, either by depositing cash or selling securities held in the customer's account, in such amount as necessary to elevate the customer's equity to the minimum thirty-five percent (35%).

Acosta does not refute the existence of the Cowen in-house margin rules and their consistency with Regulation T, C.F.R. Sections 220.1 et seq., promulgated by the Board of Governors of the Federal Reserve System pursuant to Section 7(a) of the Securities Exchange Act of 1934 (Title 15 U.S.C. Section 78g). Rather, Acosta repeatedly acknowledged his understanding of and acquiescence in the Cowen in-house margin rule that stock with a market value of less than $4.00 per share is unmarginable. (Counterclaim, Acosta Deposition and Acosta Affidavit).

Prior to October, 1987, Acosta owned 56,100 shares of Tie Communications ("Tie") stock and 2,000 shares of Marion Laboratories ("Marion") stock which were used as collateral in Acosta's margin account. At the close of the stock market on Friday, October 16, 1987, the value of Tie shares fell below $4.00 to $3⅝ per share. Cowen, accordingly, made a margin call by sending a mailgram to Acosta dated Saturday, October 17, 1987 which directed Acosta to provide additional collateral. The mailgram stated "[u]nless we receive $194,000.00 margin for your account we will liquidate sufficient securities at 10/19 Mon 12pm noon New York time or as soon thereafter as practicable ... to comply with Cowen & Co. house maintenance requirements." Richard Schulenberg ("Schulenberg"), a vice president of Baker and Acosta's broker, stated in his Affidavit filed February 28, 1989 that he telephoned Acosta three (3) times on Monday, October 19, 1987 regarding the margin call and left messages with Acosta's answering service. Acosta failed to deposit funds to meet the margin call and Cowen instructed Schulenberg to liquidate the account.

Subsequently, all stock held in Acosta's account was sold to meet the margin call. The Tie stock was sold at prices ranging from $3¼ to $2⅜ per share. Acosta alleges that the sales took place during the period October 26, 1987 to October 28, 1987 (Answer and Counterclaim Paragraphs 22 and 25 and Exhibits B and C attached thereto). However, Schulenberg, by Affidavit, states that the sales transactions occurred during the period Monday, October 19, 1987 to Wednesday, October 21, 1987, explaining that the transactions shown on the Statement of Account occurred exactly one week earlier than the dates appearing thereon, the lapse due to clearing procedures. Notwithstanding the liquidation of all stock held in the margin account, there allegedly remains a net deficit of $39,695.06 for which Acosta has failed to make payment to Cowen or Baker.[1]

The Customer Agreement executed by Acosta and Cowen provides in pertinent part that "[y]ou [Cowen] may, ... whenever in your discretion you consider it neces-

---

1. In its Complaint, Baker's calculation of the deficit was $39,697.36. However, attached to the Complaint as Exhibit A is Acosta's Statement of Account for the period ending November 27, 1987 which shows a net deficit balance of $39,695.06. In its Motion, Baker again states the deficit as $39,695.06.

sary for your protection, sell any or all property held in any of my accounts. Such sale ... may be made without advertising or notice to me and in such manner as you may in your discretion determine." (Customer Agreement Paragraph 6(b)). The agreement further provides "I [Acosta] agree to maintain such collateral in my general account as you may in your discretion require from time to time and will pay on demand any balance owing with respect to any of my margin accounts." (Customer Agreement Paragraph 6(a)). Of final significant import is Paragraph 17 of the Customer Agreement which reads: "[t]his agreement is not subject to any oral modification; the signing of this agreement revokes any and all other agreements made with Cowen & Co. or any of its predecessors, successors or assigns." Acosta does not refute the validity and enforceability of the Customer Agreement and the above quoted provisions.

Acosta contends that at some point during July, 1987, Acosta and Schulenberg, as agent for Baker, agreed that leveraged stock falling below $4.00 per share would be sold at *exactly* $4.00 per share and no less. Acosta has neither alleged nor offered any evidence that the agreement was reduced to writing. The allegation, then, must be construed to assert an oral agreement. Acosta, alternatively argues that "if the sale at $4.00 was not possible or practicable, the Tie Communications stock should have been sold at a price of $3⅝ per share." (Acosta Affidavit Paragraph 12).

Baker has moved for partial summary judgment on Counts I, II and III of its Complaint and on Counts II and III of Acosta's Counterclaim. In substance, Counts I, II and III of the Complaint allege that Acosta breached the Customer Agreement by failing to provide adequate collateral for his margin account and claim money damages due and owing from Acosta in the amount of $39,695.06 plus interest accrued since October 31, 1987 and costs. In his Counterclaim, Acosta claims compensatory damages as a result of the liquidation of the Tie stock at less than $4.00 per share in Count II, stating Baker "willfully or carelessly disregarded the oral agree-

ment," and the liquidation of the Marion stock "at prices far below the purchase price" in Count III. Acosta does not maintain that Baker was not entitled to liquidate the account. Instead, Acosta contends that summary judgment is inappropriate in this case because there remains a dispute as to the prices which should have been obtained by Baker for the liquidated stock.

## BREACH OF CONTRACT

Rule 56(e) of the Federal Rules of Civil Procedure, governing disposition on summary judgment, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the inquiry of the court must be whether there exists a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Although the burden to show the non-existence of any such issue falls upon the movant, "a party opposing summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. at 2514. The Court in *Anderson* elaborated upon the standard to which a factual controversy must rise in order to preclude summary judgment:

[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact ... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48, 106 S.Ct. at 2509–10 (emphasis in original); *accord, Kendall v. Hoover Co.*, 751 F.2d 171 (6th Cir.1984).

This Court is convinced that Baker's motion is well taken. Baker has presented the Customer Agreement and the Schulenberg affidavits which evidence i) the Cowen in-house margin rules, ii) the necessity for the margin call, iii) the propriety of the liquidation of the account and iv) Acosta's failure to make payment to cover the deficit remaining as shown by the Statement of Account. Acosta has failed to contradict any of the above-noted evidence.

 Acosta's argument, regarding the price at which the stock should have been sold by Baker, is without merit. In *Buford v. Wilmington Trust Co.*, 656 F.Supp. 869 (E.D.Pa.1987), the court held that summary judgment is appropriate in cases involving the interpretation of an unambiguous contract. The determination that a written contract is ambiguous is made as a matter of law by the court and "[c]onflicting conclusions as to the interpretations of a written contract which is clear and unambiguous as to its terms will not create a material issue of fact to bar disposition by summary judgment." *County of Erie v. American States Insurance Co.*, 573 F.Supp. 479, 483 (W.D.Pa.1983), *aff'd*, 745 F.2d 45 (3rd Cir.1984).

 As a matter of law, the contract in the instant case is unambiguous, leaving no room for conflicting interpretations of its provisions. The express language of the agreement provides that Acosta will maintain the required collateral and that Baker has authority to sell property held in the account "in such manner as [Baker] may in [its] discretion determine." The agreement places no limitation on Baker's authority to liquidate the account and assigns liability for any deficiency to Acosta. The allegation that the parties verbally agreed that stock falling below $4.00 would be sold at exactly $4.00, although highly incredulous,

must be taken as true for purposes of ruling on a motion for summary judgment. *Dent v. United States Postal Service*, 542 F.Supp. 834 (S.D.Ohio 1982). However, even assuming the existence of an oral agreement dictating the terms of liquidation of stock, any such agreement is entirely ineffective as the Customer Agreement clearly and unambiguously prohibits oral modification of its terms.

In a similar case, *Stotler & Co. v. Khabushani*, 703 F.Supp. 738 (N.D.Ill.1989), the court granted a broker's motion for summary judgment in a claim against a customer for a deficiency balance remaining after a margin call and liquidation. The *Stotler* court found that the customer had failed to keep adequate margin in his account. The customer's allegation that the parties orally agreed that transactions would be limited to "day trading" (which does not require meeting margin calls) did not bar summary judgment in light of a clause barring oral modification of the written brokerage agreement. As in *Stotler*, Acosta's unconditioned agreement to maintain adequate collateral in the margin account, the discretion given Baker to liquidate the account, and the prohibition against oral modification render any oral agreement immaterial. This court, therefore, concludes that the dispute as to whether the stock should have been sold for $4.00 per share is not a genuine issue of material fact requiring denial of Baker's motion.

## BREACH OF FIDUCIARY DUTY

In his Affidavit, Acosta alternatively alleges that Baker "should have sold the Tie stock for $3⅝," the price at which Acosta asserts Tie shares opened on Monday, October 19, 1987 ("Black Monday").[2] Count III of Acosta's Counterclaim alleges that the Marion stock was sold "[w]ithout Defendant's authorization ... at prices far below the purchase price."[3] Although

---

**2.** Schulenberg states in his Affidavit, filed July 7, 1989, that on October 19, 1987, Tie shares were trading at a high/ask price of $3½, a low/bid price of $2¾ and closed at the price of $3⅛. Schulenberg supports these assertions by

submission of *Wall Street Journal* quotations for Tie shares attached to his Affidavit as Exhibit 1.

**3.** It should be noted that neither Acosta's Motion in Opposition to Plaintiff's Motion for Partial Summary Judgment nor his Affidavit ad-

breach of fiduciary duty is not specifically asserted, the above allegations seem to constitute such a claim given the obligation to interpret the allegations most favorably to Acosta. However, as discussed above, the Customer Agreement gave Baker absolute authority and discretion to liquidate the account when it determined sale of the stock was necessary for its protection and in such manner as it should determine.

The Eleventh Circuit, in *Misabec Mercantile Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.,* 853 F.2d 834 (11th Cir.1988), recently considered a claim for breach of fiduciary duty arising from a broker's liquidation of a commodities futures margin account pursuant to contract language virtually identical to the language in the Customer Agreement which provided that the broker had authority to liquidate the account "whenever in your sole discretion you consider it necessary for your protection." In *Misabec,* the court held that a claim against the broker for breach of fiduciary duty in liquidating the investor's commodities futures margin account was precluded by the finding that the broker acted in accordance with the terms of the written brokerage agreement. *Id.* at 839. Relying on the contract clause conferring absolute discretion to liquidate the account on the broker, the *Misabec* court concluded that the investor "failed to demonstrate that a genuine issue of material fact exists" regarding its claim for breach of fiduciary duty. *Id.*

The same result should follow in the instant case. Acosta has presented no evidence indicating that the liquidation was inconsistent with the authority contractually delegated to Baker to sell the securities in the margin account. Not only has Acosta conceded his assent to the Customer Agreement conferring complete discretion on Baker to liquidate the account "in such manner as you [Baker] may in your discretion determine," but he has also failed to cite any law supporting his contention that Baker should have sold the Ties shares for at $3⅝. Acosta has failed to satisfy his burden of establishing the existence of a

genuine issue of material fact concerning a breach of fiduciary duty.

Accordingly, Baker's Motion for Partial Summary Judgment on Counts I, II and III of its Complaint and Counts II and III of Acosta's Counterclaim is hereby granted.

IT IS SO ORDERED.

dress Count III of the Counterclaim regarding the sale of the Marion stock.