**Edward S. KRAEMER, Plaintiff,**

v.

**EDWARD KRAEMER & SONS, INC., et al., Defendants.**

**Civ. No. 3:90CV7360.**

United States District Court,
N.D. Ohio, W.D.

May 8, 1991.

David Schnorf, Toledo, Ohio, for plaintiff.

Steve Stanford, Toledo, Ohio, James Cole, Madison, Wis., for defendants.

## OPINION AND ORDER

JOHN W. POTTER, District Judge:

This cause is before the Court on defendants' motion for summary judgment, plaintiff's opposition, and defendants' reply. In the alternative to opposing defendants' motion, plaintiff moves this Court under Fed.R.Civ.P. 56(f) to postpone ruling on defendants' motion and grant plaintiff additional time to engage in discovery so that he can develop sufficient facts to oppose defendants' motion. Previously, in reference to the instant motion, the Court said:

> The Court mentioned above the other motions pending in this case. Also mentioned was the fact that a trial in this cause is set to commence on April 22, 1991. The Court will meet with counsel and the parties at the final pretrial conference on Monday, April 15, 1991. At this time, the Court will rule on the other pending motions. Counsel should attend the final pretrial prepared to discuss the pending motions.

Memorandum and Order April 9, 1991. Based on the briefs now before the Court and a review of the docket sheet, the Court finds defendants' motion well taken and plaintiff's alternative request not well taken.

The Court outlined the pertinent facts in its previous order. This case presents a feud between two brothers for control of the family business. Defendant Edward S. Kraemer & Sons, Inc. (EKS) is a construction company that was founded by plaintiff's grandfather. Plaintiff was an employee of EKS from 1969 until 1989. Plaintiff was once Vice President and General Manager of EKS' Clay Center Division, White Rock Quarry. In addition, up until 1986, plaintiff owned shares of class B non-voting stock in EKS. Due to a deadlock in the management of EKS, defendant David R. Kraemer and his father Rudolph Kraemer formed a corporation named Eames, Ltd. (Eames) for the purposes of buying all the voting stock in EKS. After purchasing all of the voting stock in EKS, Eames turned its attention to purchasing all of the non-voting stock of EKS. In January, 1986, plaintiff sold all of his class B non-voting stock in EKS to Eames for the sum of $850,000.00. A document was signed to memorialize this transfer of stock. In Article III of this document, the parties bargained for the following provision.

> 3.1 As part of the consideration and inducement to Shareholder [plaintiff] to enter into this agreement, Buyer [Eames] agrees that it shall cause the Corporation [EKS] to continue the employment of Edward Kraemer [plaintiff] for not less than twelve (12) months after closing at his present compensation and benefits (including club dues [to the Toledo Club]), subject to general increases made by the Corporation, from time to time, for the benefit of its supervisory employees consistent with past practice. This provision shall not prevent the Corporation from terminating the employment of any employee who is guilty of wilfull [sic] and wanton misconduct or gross negligence detrimental to the interests of the business of the Corporation. The Corporation shall continue compensation and benefits for Edward Kraemer at the level existing at employment termination, for 18 months after termination of employment. On termination of employment, Shareholder shall be entitled to purchase from the Corporation the automobile then furnished to him for his use; the purchase price shall be the value then shown for such automobile on the books of the Corporation.

Complaint Exhibit A at 3. Plaintiff was represented by Attorney Willis Jones at the time he signed this document. On October 30, 1989, plaintiff was removed from his position as General Manager. Plaintiff claims that he was terminated from employment with EKS effective January 4,

1990. Based on the above, plaintiff filed his complaint on July 19, 1990 setting forth three causes of action.

In his first cause of action, plaintiff claims that "[d]efendant [EKS] terminated Plaintiff because of his age and in violation of the Age Discrimination in Employment Act [ADEA], 29 USC § 623(A)(1)." In his second cause of action, plaintiff claims that the language quoted above in Article III of the stock purchase agreement guaranteed him continued employment subject to termination for wilful and wanton misconduct or gross negligence. Plaintiff claims that defendant EKS breached its contract with plaintiff by terminating him in violation of the terms of the stock purchase agreement. In his third cause of action, plaintiff claims that defendant David R. Kraemer, as a guarantor under the stock purchase agreement, is personally liable for defendant EKS' actions in terminating plaintiff.

The Court finds it most proper to first rule on plaintiff's request under Fed. R.Civ.P. 56(f) for additional time to pursue discovery. In its entirety, the Rule provides:

> (f) **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Plaintiff introduces the affidavit of David M. Schnorf, one of the counsel of record for plaintiff, to support his Rule 56(f) request. Mr. Schnorf claims that he has "good reason to believe that additional discovery may have to be taken by [plaintiff] in order to fully and completely respond to the Motion for Summary Judgment of [defendants]." Affidavit of David M. Schnorf at ¶ 4. Mr. Schnorf ends his affidavit with a list of individuals he would like to depose before being required to "fully and completely" respond to defendants' motion. See *Id.* at ¶ 8.

In the Sixth Circuit, the definitive statement on the propriety of granting or denying a Rule 56(f) motion comes from the case of *Emmons v. McLaughlin,* 874 F.2d 351 (6th Cir.1989). That case involved an appeal from a judgment of this Court's former Judge Richard B. McQuade. In *Emmons,* Judge McQuade granted summary judgment in favor of defendants and denied plaintiff's request under Rule 56(f). The United States Court of Appeals for the Sixth Circuit held that Judge McQuade had not abused his discretion in denying plaintiff's request. *Id.* at 356–57. After holding that the scope of discovery is within the sound discretion of the trial court, the *Emmons* court said:

> Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so *in good faith* by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where … a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified.

*Id.,* (quoting *Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289, 297 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)) (emphasis added).

For two reasons, the Court denies plaintiff's request. First, the Court finds from an examination of the record that plaintiff's request is late. Second, due to the Court's disposition of plaintiff's breach of contract claim, *infra,* the Court finds that plaintiff will not be able to rebut defendants' showing by engaging in discovery related to "the parties' arrangements, intent, responsibilities and duties, and the circumstances surrounding the negotiation and preparation of the [stock pur-

chase] agreement...." Affidavit of David M. Schnorf at ¶ 6.

A learned treatise has provided the following guidance to the Court.

> As intimated earlier, the rule will not be applied to aid a party who has been *lazy* or *dilatory*. Thus, a request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery. The courts will not delay a case to allow discovery when the discovery sought could have been instituted earlier, especially when there is no reason to believe that it will lead to a denial of a motion.

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2741 (1983) (citations omitted) (emphasis added). The record in this case reveals the following.

This cause was filed by plaintiff on July 19, 1990. On October 22, 1990, the Court held an initial scheduling conference with counsel and agreed upon a trial date of April 23, 1991. The scheduling order which resulted from that conference notified the parties that:

> 3. Discovery to be completed not later than twelve weeks, and motions to be filed not later than eight weeks prior to trial. Counsel may mutually consent to extension of time for discovery provided that such extension does not interfere with dates previously ordered by the Court.[1]

Trial Order, Nov. 5, 1990. On December 26, 1990, Mr. Schnorf sent a letter to Attorney James R. Cole, principal trial counsel for defendants, regarding the rescheduling of the deposition of Marion Inez Kraemer, a deposition which was terminated on December 12, 1990. Mr. Schnorf ended the letter by advising Mr. Cole as follows: "In all likelihood, we will ask the court to extend discovery and request a new trial date be set in this matter." Exhibit E to Mr. Cole's Affidavit in Opposition to Plaintiff's Motion for a Protective Order and in Support of Defendants' Motion in Limine. Plaintiff did not file a motion to vacate the trial date and extend the discovery deadline until February 26, 1991. After the Court denied plaintiff's motion, plaintiff filed the instant request with his opposition to defendants' motion for summary judgment.

A review of the file also reveals the following. On January 14, 1991, plaintiff moved for an extension of time until February 18, 1991 to respond to defendants' interrogatories. Defendants responded to this extension by pointing out that the discovery cutoff date was January 29, 1991. The Court granted plaintiff's motion. On February 15, 1991, plaintiff moved for extensions of time to file a reply brief in support of his motion for a protective order and to oppose defendants' motion in limine. On February 19, 1991, plaintiff again moved for an extension of time until February 28, 1991 to respond to defendants' interrogatories. This time defendants opposed plaintiff's motion. Again, the Court granted all three of plaintiff's requests for additional time. On March 6, 1991, plaintiff moved for an extension of time until March 18, 1991 to oppose defendants' motion for summary judgment. The Court granted plaintiff's motion on March 13, 1991. These motions for extensions of time are in addition to plaintiff's motion to vacate the trial date and extend the discovery cutoff date.

The treatise mentioned above further provided that "if the discovery sought appears irrelevant to the issues to be adjudicated or if it is merely cumulative, summary judgment will not be delayed. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2741 (1983) (citations omitted). Plaintiff's reason for seeking additional time is so that he may pursue discovery related to the parties intentions when forming the contract which is at issue in plaintiff's second and third causes of action. As the Court finds *infra* that the contract at issue is not ambiguous, discovery related to the parties' intent

---

1. The Court finds no evidence in the record that either party has attempted to cooperate in conducting discovery after the discovery date passed on January 29, 1991. Both parties appear to have seized the first sentence of the trial order's third paragraph, and hence, the record contains no evidence of discovery having occurred after the January 29 cutoff date.

while forming it would be irrelevant. Therefore, in this light, plaintiff's Rule 56(f) request is likewise not well taken.

Turning to defendants' motion for summary judgment, the Court will examine plaintiff's case pursuant to the following standard.

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, [477 U.S. 242], 106 S.Ct. 2505, 2512 [91 L.Ed.2d 202] (1986).... In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, [475 U.S. 574], 106 S.Ct. 1348, 1356–57 [89 L.Ed.2d 538] (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] (1962)).

*Ralph Shrader, Inc. v. Diamond International Corp.*, 833 F.2d 1210, 1213 (6th Cir. 1987).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry

of summary judgment. *Id.* A moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 324–325, 106 S.Ct. at 2553–54. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. "[P]laintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257, 106 S.Ct. at 2514.

Defendants begin by attacking plaintiff's age discrimination claim.

The elements of a *prima facia* case of age discrimination require that the charging party demonstrate that (1) she was a member of the protected class, i.e., the she was between the ages of 40 to 65 years of age;[2] (2) that she was subjected to an adverse employment action; (3) that she was qualified for the particular position; and (4) that she was replaced by a person not a member of the protected class.

*Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 313 (6th Cir.1989) (citations omitted). "The Supreme Court has instructed that it is the plaintiff who bears the burden of proving a *prima facia* case of employment discrimination and additionally of rebutting any legitimate, nondiscriminatory explanation proffered by the employer for its actions." *Id.*, at 312. In this case, defendants do not take issue with plaintiff's ability to establish the first two elements of his *prima facia* case. Plaintiff was 45 years of age at the time his employment with EKS ended. Plaintiff was thus within the protected class. Defendants admit that in October of 1989, Charles Bigelow, human resources manager for EKS, and defendant David Kraemer met with plaintiff and told plaintiff that "he was being removed from his position as division manager." Affidavit of David R. Kraemer at ¶ 34. Though plaintiff further claims that his employment with EKS was com-

---

**2.** Section 631(a) of 29 U.S.C. has since been amended to provide for no upper age limit.

pletely terminated effective January 4, 1990, defendants claim that plaintiff rejected their offer of reassignment and terminated his own employment with EKS. However, as there is no dispute regarding the fact that defendants removed plaintiff from his position as division manager, plaintiff has established that he was subjected to adverse employment action.

Though in *Gagne*, the Sixth Circuit found the first, second, and fourth prongs in the test met; assumed that the third prong had been met; found a *prima facia* case of discrimination; and proceeded to examine the defendant's legitimate, nondiscriminatory reason for discharging the plaintiff, defendants in this case take issue with plaintiff's ability to show that he was qualified for the position as division manager. In any event, defendants introduce the affidavits of Robert A. Blettner, Richard A. Brown, and David R. Kraemer to both refute plaintiff's claim that he was qualified for his position as division manager and set forth legitimate, nondiscriminatory reasons for their decision to remove plaintiff from his position as division manager.

█ The Court need not resolve the issue of whether plaintiff has established the third element of his *prima facia* case. As the Sixth Circuit stated in *Gagne*, "it is clear that merely making out a prima facia case does not automatically save [plaintiff] from a summary judgment motion. 'Indeed, the inference of discrimination created by the prima facia case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext.'" *Gagne*, 881 F.2d at 314 (citing *Menard v. First Securities Serv. Corp.*, 848 F.2d 281, 287 (1st Cir.1988)). The Court will elaborate on defendants' legitimate proffered reason for removing plaintiff as division manager *infra*. However, given the law as spelled-out by the Sixth Circuit and given that defendants have produced evidence of a legitimate nondiscriminatory reason, the Court finds that it would

not prejudice either party to assume that plaintiff has made a prima facia showing and go on to examine plaintiff's evidence in light of defendants' articulated reason.[3]

█ "In order to show that he was qualified, [plaintiff] must prove that he was performing his job 'at a level which met his employer's legitimate expectations.'" *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990) (*quoting Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir.1983)). "Moreover, 'if [plaintiff] was not doing what his employer wanted him to do, he was not doing his job.... [Plaintiff] does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors.'" *McDonald*, 898 F.2d at 1160 (quoting *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)). The affidavits submitted by defendants in support of their motion for summary judgment paint a bleak picture of the financial condition of the Clay Center division in 1989 and plaintiff's ability to manage the Clay Center division. Robert A. Blettner, a member of EKS' Board of Directors while plaintiff was the division head of the Clay Center division, testifies as follows:

> There were continuing problems with Edward's performance, or lack thereof, in managing the Clay Center Division. David Kraemer consulted with me on several occasions preceding his father's death regarding Edward's expense accounts, lack of dedication to his job and failure to dedicate substantial efforts to managing the division.
>
> . . . . .
>
> ... [A] contingency committee was established at the May 10, 1989, board of Directors meeting to meet with each division head, review the financial statements and operations with each division head, and look for ways to immediately

---

**3.** The Court finds as not well taken plaintiff's argument that "[i]nasmuch as Plaintiff Kraemer has presented a *prima facia* case under the [ADEA], Defendants Motion should be denied." Plaintiff's Memorandum at 8. The law in the

Sixth Circuit, as cited above, is clear that a plaintiff may not proceed beyond a well-stated motion for summary judgment merely by resting on its prima facia showing.

improve performance. I was appointed as a member of that contingency committee.

... Edward Kraemer was interviewed during the June 1, 1989 meeting and told by the contingency committee that improvement from his division was imperative or else the chief executive officer would change managers, sell or liquidate the Clay Center Division. *Edward was further told that continued losses would not be tolerated.* It was made *clear to Edward* that *his job was on the line* if he did not improve performance at the Clay Center Division.

Affidavit of Robert A. Blettner at ¶¶ 12–15 (emphasis added). Richard A. Brown, a certified public accountant at KPMG Peat Marwick (Peat Marwick) corroborates Mr. Blettner's testimony.

Pursuant to a request from the EKS Board of Directors on May 10, 1989, I became a member of a contingency committee. The primary focus of the contingency committee was on performance of each of the EKS divisions and the plans to improve the operating performance of each division. Other members of the contingency committee included John Senseman, Vice President and Chief Financial Officer of EKS and Robert A. Blettner, a member of the EKS Board of Directors who is not an employee of EKS.

The first two meetings of the contingency committee were held on May 17, 1989 at EKS offices, Plain, Wisconsin, and June 2, 1989, at the offices of Robert A. Blettner in Madison, Wisconsin.... The Clay Center division was discussed most due to its continued and sustained losses.

In the June 1, 1989, contingency committee a presentation was made by Edward Kraemer regarding the Clay Center division. Edward Kraemer was informed at that meeting by the contingency committee that *substantial improvement* in operating performance *had to be made* in the following six months or *corrective action* would have to be taken by David Kraemer, the President and Chief Execu-

tive Officer. Certain of the corrective actions discussed included:

.    .    .    .    .

d. Making significant personnel changes, *including the possible replacement of Edward Kraemer as division manager.*

Edward Kraemer was present during the discussion of those possible corrective actions.

Affidavit of Richard A. Brown at ¶¶ 3–5 (emphasis added). David R. Kraemer's affidavit contains similar corroborative testimony on the inadequacy of his brother's management of the Clay Center division. Mr. Blettner testifies that two independent studies; one performed by R.F. Mickus and Associates and the other performed by Krause Consultants, recommended that plaintiff be replaced as division manager of the Clay Center division. Mr. Brown testifies that the contingency committee recommended that plaintiff be replaced as division head, and that he personally supported the recommendation since he felt that it was in the best interests of EKS. David R. Kraemer testifies that he met with plaintiff on September 22, 1989 and told plaintiff that "he must make changes in his office staff to better the performance of his division." Affidavit of David R. Kraemer at ¶ 27. David Kraemer further testifies that plaintiff refused to make the changes the he was told to make. Consequently, David Kraemer testifies that:

I had been reluctant to take action regarding Edward because of family loyalty; however, his failure to improve his performance or demonstrate any improvement in his dedication to his job compelled me to remove him as division manager. Edward's age was not a factor in making this decision; in fact, Edward's immediate replacement was Robert Koenig, a long time employee, who was 65 years of age.

Affidavit of David R. Kraemer at ¶ 33.

The affidavits submitted by plaintiff in opposition to defendants' motion do not contradict any of the above. In his own affidavit, plaintiff, without elaboration, states that "the contrived financial figures

and unjustified poor evaluations of me, as prepared by my brother, David Kraemer, were preferred reasons as a pretext for discrimination against me." Affidavit of Edward S. Kraemer at ¶ 21. Both plaintiff and his mother testify that plaintiff was qualified for his job.

The Court finds that plaintiff's proffered evidence is insufficient, as a matter of law, to raise a triable issue on the age discrimination claim. Even assuming that plaintiff has made a prima facia showing, defendants' legitimate, nondiscriminatory reasons for discharging plaintiff have gone unchallenged. Though plaintiff claims these reasons were a pretext, he offers his own conclusory allegation as the only support that defendants' reasons were a pretext. Marion Inez Kraemer's affidavit provides support only for plaintiff's contention that he "faithfully performed his duties." It does not contradict defendants' contentions. As plaintiff has failed to proffer sufficient evidence that would tend to show that age was a determining factor in his discharge, *Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1181 (6th Cir.1983), summary judgment will be granted to defendants on plaintiff's first cause of action.

█ Defendants move for summary judgment on plaintiff's second cause of action, the contract claim. Defendants contend that the stock purchase agreement is an unambiguous statement of the parties rights, that the clear language of the contract guaranteed plaintiff only twelve months of employment and eighteen months of severance pay, and that the language is not susceptible to being interpreted as providing lifetime employment to plaintiff. Plaintiff contends that the stock purchase agreement did provide lifetime employment to plaintiff, or that in any event, the contract is ambiguous and should be submitted to a jury.

The contract clause in issue, paragraph 3.1, was quoted above in its entirety. In addition to that paragraph, the contract also provides the following.

This agreement, and the schedule hereto and the agreements, instruments and other documents to be delivered pursu-

ant hereto embody the entire agreement among the parties hereto with respect to the transactions contemplated herein, and there have been and are no agreements, representations or warranties between the parties other than those set forth or provided herein or therein.

Exhibit A to plaintiff's complaint at ¶ 9.3.

As Judge Battisti has said:

The determination that a written contract is ambiguous is made as a matter of law by the court and "[c]onflicting conclusions as to the interpretations of a written contract which is clear and unambiguous as to its terms will not create a material issue of fact to bar disposition by summary judgment."

*D.L. Baker & Co., Inc. v. Acosta,* 720 F.Supp. 615, 618 (N.D.Ohio 1989) (quoting *Erie County v. American States Insurance Co.,* 573 F.Supp. 479, 483 (W.D.Pa. 1983), *aff'd,* 745 F.2d 45 (3rd Cir.1984)). The law in Ohio is in accord. See *Uebelacker v. Cincom Systems, Inc.,* 48 Ohio App.3d 268, 271, 549 N.E.2d 1210 (1988) (citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146 (1978)). "If the contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court *must* give effect to the agreement's express terms." *Uebelacker,* 48 Ohio App.3d at 271, 549 N.E.2d 1210 (citation omitted) (emphasis added). The *Uebelacker* court noted the presence of a merger clause, not unlike the merger clause in paragraph 9.3 above, as a factor in determining whether an ambiguity was present in the agreement. *Uebelacker,* 48 Ohio App.3d at 271, 549 N.E.2d 1210.

The Court finds nothing ambiguous in the provisions of the stock purchase agreement. The agreement provides only twelve months of guaranteed employment to plaintiff. It also provides that plaintiff will be provided with eighteen months of severance pay once his employment has been terminated. Simply put, no reading of the plain language in the agreement could lead

to the conclusion that defendants were promising plaintiff lifetime employment.

"As a general rule, an employment agreement of indefinite duration is terminable at the will of either party to the agreement, unless the parties provide otherwise." *Uebelacker*, 48 Ohio App.3d at 271, 549 N.E.2d 1210; see also *Wing v. Anchor Media*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), and *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 316–17 (6th Cir.1989) (applying Ohio law). "Ohio case precedent holds that an at will employee may be terminated at any time and for any reason." *Gagne*, 881 F.2d at 316 (citing *Phung v. Waste Management, Inc.*, 23 Ohio St.3d 100, 102, 491 N.E.2d 1114 (1986)). Plaintiff signed the stock purchase agreement on January 17, 1986. Plaintiff was removed as head of the Clay Center distribution operation in October of 1989. Plaintiff thus received the twelve months of guaranteed employment provided in the contract. After January 18, 1987, the relationship between the parties became employment-at-will. Defendants, thus, did not violate any provision in the contract when they terminated plaintiff. Since the contract is unambiguous, summary judgment is appropriate. Since plaintiff has produced no evidence that defendants violated any provision of the contract, defendants are entitled to summary judgment on plaintiff's second cause of action.

■ Plaintiff's third and final cause of action is directed against defendant David R. Kraemer only. Plaintiff claims "[i]nasmuch as Plaintiff Kraemer's unjustified termination of employment constituted a breach of the terms of Article III of the primary contract, the personal liability of Defendant Kraemer exists and attaches." Plaintiff's Memorandum in Opposition at 18. Defendant David R. Kraemer does not dispute that he is a guarantor under the terms of the stock purchase agreement. Paragraph 1.1 of the Stock Purchase Agreement provides that:

... Rudolph L. Kraemer and David R. Kraemer (herein sometimes referred to as "guarantors") join herein to guaranty to Shareholder the performance of Buyer under Articles II and III....

Defendant alleges, and plaintiff does not dispute, that the obligations in Article II of the contract were fulfilled when defendants paid plaintiff $850,000 for his stock. Article III, once again, provided plaintiff with a guaranty of twelve months of employment and a further guaranty of eighteen months of severance pay. Defendant claims that no liability under a contract guarantee can exist independent of some breach of the primary contract. *Ohio Sav. Ass'n v. Cortell*, 24 Ohio App.3d 234, 495 N.E.2d 33 (1985). Plaintiff agrees with this statement of the law. See Plaintiff's Memorandum in Opposition at 18–19. The Court found above that plaintiff has failed to proffer evidence sufficient to raise a material issue as to whether defendants' breached their contract with plaintiff. Therefore, it follows that plaintiff has likewise failed to proffer sufficient evidence to create a genuine issue regarding whether defendant David R. Kraemer breached his guaranty. Defendant David R. Kraemer is entitled to summary judgment on plaintiff's third cause of action.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that plaintiff's request for Fed.R.Civ.P. 56(f) discovery be, and hereby is, DENIED; and it is

FURTHER ORDERED that defendants' motion for summary judgment be, and hereby is, GRANTED.