DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, R. Richard Wade, appeals the judgment of the Wayne County Common Pleas Court dismissing his complaint and granting appellee, The Savings Bank and Trust Company, summary judgment on its counterclaim. We affirm.
On February 14, 1994, Wade and another individual, Gary L. Grice, signed a promissory note payable to The Savings Bank and Trust Company ("the bank"). The collateral listed on the application was "all veal calves" located in certain parts of the state. As it turns out, there were no veal calves. Wade admits that he knew there were no veal calves, but claims he was not aware that such was listed as collateral on the application he signed.
On July 19, 1996, Grice filed a no-asset, Chapter 7 bankruptcy requesting discharge on the note owed to the bank. In September, Wade made written request to the bank to contest Grice's discharge based on the misrepresentations Grice allegedly made concerning collateral. The following month, without ever contesting Grice's discharge, the bank made demand upon Wade to pay the note. In November, Grice's liability on the note was discharged in the bankruptcy proceeding.
Wade filed a complaint for declaratory judgment in the lower court to determine whether he had been released from his obligation on the note due to the bank's failure to contest Grice's discharge. The bank answered and counterclaimed for judgment on the note. Thereafter, the bank moved for summary judgment, requesting that Wade's complaint be dismissed and that judgment on the note be granted in its favor. The lower court granted this motion. Wade appeals, raising three assignments of error.
 I. The trial court erred in granting defendant's motion for summary judgment.
 II. The trial court's ruling that the "obligations independent" clause contained in the note operated as a waiver of Wade's defenses under Section 1303.72, R.C. (sic) is contrary to law and against the manifest weight of the evidence.
 III. The trial court's ruling that Section 1343.03 (sic 1341.03), R.C. (sic) does not nullify the "obligations independent" clause of the note is contrary to law and against the manifest weight of the evidence.
 A. Summary Judgment
Summary judgment is appropriate when there are no genuine issues of material fact remaining to be litigated. Civ.R. 56(C). Viewing the evidence in a light most favorable to the nonmoving party, reasonable minds must only be able to conclude that the moving party is entitled to judgment as a matter of law. Id.
This same standard is applied by a reviewing court on appeal.Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826,829.
In this case, the bank argued that Wade was a co-maker of the note. Wade argued that he placed his name on the note merely as an accommodation party. The lower court, pursuant to the summary judgment standard, assumed, without deciding, that Wade was an accommodation party as he claimed. This construction of the evidence favored Wade's interpretation of the facts and eliminated what otherwise would have been a genuine issue of fact. We will, therefore, make the same assumption on this appeal.
 B. The Note
To understand the arguments made by Wade in this case, we must describe in some detail portions of the note he signed. In the top left corner of the document, there are preprinted lines provided, on which is typed "GARY L GRICE DBA G G LIVESTOCK" and an address. Under these lines on the preprinted form it states, "`I' includes each borrower above, jointly and severally."
On the second page of the note there is a clause identified as the "OBLIGATIONS INDEPENDENT" clause. This clause states, in part:
 I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note.
At the bottom, right corner of the front page, the note reads, "SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2)." Beneath this statement are the signatures of both Grice and Wade.
 C. The Obligations Independent Clause
We wish to first dispose of Wade's argument that, due to the fact he was not listed in the top left corner of the front page, the term "I" did not apply to him at any point in the contract. Therefore, as he argues, the obligations independent clause did not apply to him.
We disagree with Wade's interpretation. First, the definition of "I" at the top states that it "includes" those listed above. It does not say it is limited to them. The definition establishes the joint and several liability of the borrowers listed, it does not claim to establish the status of any other party, particularly one who signs as an accommodation party. Second, there was no description provided by Wade's name which would serve to limit his obligation in any way, as may be expected in the case of some sureties who assume only secondary or limited liability. See Mid-American Natl. Bank Trust Co. v. Partyville,Inc. (Mar. 6, 1987), Lucas App. No. L-86-232, unreported. We believe, therefore, that reasonable minds could only conclude that by placing his name on the document under the words "I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2)," and by using no other language to modify or limit his obligation, Wade did, in fact, agree to the terms of the note, including the obligations independent clause on the second page.
 D. R.C. 1303.72
R.C. 1303.72, which was in effect at the time the note was signed, stated in part:
 (A) The holder discharges any party to the instrument to the extent that without such party's consent the holder:
 (1) without express reservation of rights, releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person * * *; or
 (2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
In Wade's deposition, he states numerous times that he understood his role in signing the note to be that of a guarantor. His deposition reads, in part:
 Q But you still knew you were personally guarantying [the note]?
A Uh, yes.
Q That you'd be liable if he didn't pay?
A Uh, yes.
* * *
Q You just signed the note?
A That's correct.
Q And knew that you'd have to pay if he didn't pay?
A Correct.
Q That was good enough for you?
A Yes.
And, later:
 Q * * * [S]o to enable Gary Grice to get the loan at the Savings Bank you were willing to sign with him on this note?
A As a guarantor.
Q As a guarantor?
A Yes.
 Q Knowing that you'd have to pay it off if he didn't pay it off?
A Yes.
Construing the evidence in a light most favorable to Wade, as we have discussed, we will take his deposition at face value and presume he signed the note in the capacity of an accommodation party, specifically that of a guarantor. He argues that, as an accommodation party, he had certain rights under R.C. 1303.72. Based on the statutory language quoted above, he contends that because the bank did not contest Grice's discharge in bankruptcy, this somehow impaired Wade's right to recourse or collateral and thereby discharged him as well. We disagree.
R.C. 1303.72, as it existed at that time, applied to situations where the holder, or the bank in this case, impairs the collateral or somehow discharges the liability of one party from whom another party has a right of recourse. In this case, Wade cannot argue the bank impaired the collateral. There was no collateral. Also, the bank was not responsible for Grice's discharge on the debt. It did not agree to or arrange the discharge. Grice's debt was discharged by operation of law through a no-asset, Chapter 7 bankruptcy proceeding. Such a discharge should in no way invalidate the guaranty agreement. SeeMutual Finance Co. v. Politzer (1968), 16 Ohio App.2d 83, 91-92, reversed on other grounds (1970), 21 Ohio St.2d 177. In fact, "the principal debtor's bankruptcy and discharge from its obligations is the very case where the accommodation party should be called upon to pay." White Summers, Uniform Commercial Code (4 Ed. 1995) 479, 482, Section 13-8. Therefore, R.C. 1303.72 would not seem to be applicable in this case.
Even if the bank had acted to discharge Grice in this case, however, we would still find Wade liable on the note. According to the provisions of R.C. 1303.72, a surety is discharged on a debt only if the bank, "without such party's consent," discharges the primary debtor. In this case, according to the obligations independent clause, Wade agreed to the following language:
 You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note.
Therefore, pursuant to the language of the note itself, Wade consented to the bank's right to discharge Grice and he cannot now claim the protection of R.C. 1303.72.
 E. R.C. 1341.03
In Wade's third assignment of error, he again argues that the obligations independent clause did not apply to him based on the language of R.C. 1341.03 and R.C. 1341.04. R.C. 1341.03 states:
 In contracts for the payment of money to banks or bankers, sureties in fact, known to the parties to be such at the time such contracts were made, may be proved, and shall be considered in all courts, to be sureties, and have all the privileges of sureties, anything in the contract expressed to the contrary notwithstanding.
R.C. 1341.04 states:
 A person bound as surety in a written instrument for the payment of money or other valuable thing, if a right of action accrued thereon, may require his creditor, by notice in writing, to commence an action on such instrument forthwith against the principal debtor. Unless the creditor commences such action within a reasonable time thereafter, * * * the creditor * * * so failing to comply with the requisition of such surety, thereby shall forfeit the right which he otherwise would have to demand and receive of him the amount due thereon.
Pursuant to these sections, then, Wade contends that he had the unrestricted right to insist that the bank first pursue Grice, notwithstanding the obligations independent clause contained in the contract he signed which stated otherwise. Once again, we disagree with Wade's analysis.
We have already indicated that Wade believed himself to be a guarantor on the note. While the Uniform Commercial Code seems to essentially abolish the distinction between a "guarantor" and any other surety, see Ohio Savings Assn. v. Cortell (1985), 24 Ohio App.3d 234,236, overruled on other grounds by Shore West Constr.Co. v. Sroka (1991), 61 Ohio St.3d 45, 49; R.C. 1301.01(NN), R.C.1303.52 does make a distinction between a "payment guaranteed" surety and a "collection guaranteed" surety. R.C. 1303.52(A), more recently codified than R.C. 1341.03, provides: "`Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." The language in the obligations independent clause, "I understand that I must pay this note even if someone else has also agreed to pay it * * *. You may sue me alone * * * without any notice that it has not been paid," constitutes language of guaranteed payment. As already indicated, Wade himself repeatedly testified in his deposition that he knew that if Grice failed to pay, he would be liable on the note. Such being the case, Wade is a "payment guaranteed" surety and:
 therefore comes under R.C. 1303.52(A). According to the provisions of his contract, he absolutely and unconditionally guaranteed payment of the Note if the Note was not paid * * * when due, without [the creditor] being required to pursue any other party for payment. Accordingly, the provisions of R.C. 1341.04 enacted prior to the Commercial Code, wherein sureties may require creditors to sue the principal debtor, are not applicable to commercial paper "payment guaranteed" sureties under R.C. 1303.52 of the Commercial Code. Therefore, R.C. 1341.04 [i]s not available to [the guarantor] as a defense * * *."
Ohio Savings Assn., supra. See, also, Mid-American Natl. Bank,supra; Mutual Finance Co., supra at 86. Assuming, then, pursuant to Wade's version of the facts, that he was a guarantor or "payment guaranteed" surety on the note, his liability existed the moment the debt became due. See Mutual Finance Co., supra at 87. He admitted he was aware of this fact. With Wade as an absolute and unconditional guarantor of payment, the bank had no duty to proceed against Grice. Id. The provisions of R.C. Chapter 1341 are, therefore, not available to Wade. Ohio Savings Assn., supra.
 F. Conclusion
In summary, then, the term "I" in the note must include Wade, as his signature indicates he agreed to the terms therein. R.C. 1303.72 is inapplicable in this case because the bank did not impair the collateral and was not responsible for Grice's discharge in bankruptcy, and also because Wade waived his rights under this section when he signed the note. As a "payment guaranteed" surety on the note and pursuant to the "payment guaranteed" type language in the obligations independent clause, the bank was entitled, once payments on the note became overdue, to pursue Wade for payment without resorting to any other party, pursuant to R.C. 1303.52(A). Wade therefore had no right to demand the bank pursue Grice before him or to insist that the bank contest Grice's discharge in bankruptcy. The bank's failure to do so did not release Wade from the obligation he undertook as payment guarantor on the note.
For the above reasons, construing the evidence most strongly in Wade's favor, we find there are no genuine issues of material fact remaining and that the bank was entitled to judgment as a matter of law. We conclude that the lower court did not err in dismissing Wade's complaint for declaratory judgment and in granting summary judgment in the bank's favor on its counterclaim. Wade's assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Wayne Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ DANIEL B. QUILLIN, FOR THE COURT
REECE, J.
DICKINSON, J., CONCUR